UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ROBERT BAKER,                          )
                                       )
                    Petitioner,        )
                                       )
v.                                     )       Case No. 4:15 CV 1262 CDP
                                       )
TROY STEELE,                           )
                                       )
                    Respondent.        )

## MEMORANDUM & ORDER

This case comes before this Court on Robert Baker's amended pro se

petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]  In 2010, a state

jury convicted Baker of two counts of first-degree statutory sodomy and six counts

of first-degree child molestation.  The trial court sentenced Baker to eight

concurrent life sentences, one on each count.  In his petition for habeas corpus,

Baker asserts three grounds for relief.  Baker's first and third grounds for relief are

procedurally barred because he failed to raise them in conformity with the

procedural requirements of the Missouri courts.  Baker's remaining ground for

relief is denied on the merits, because the Missouri Court of Appeals reasonably

applied the proper federal standard in considering and denying that claim.

---

[1] Because Baker filed an amended petition, his original petition for writ of habeas corpus (Doc.
1) is denied as moot.

Accordingly, for the reasons that follow, this Court will deny Baker's amended petition for writ of habeas corpus.

## Background

Baker was convicted at trial of sexually abusing five minor girls with whom he shared a residence from 2007 to 2010. Because the five victims were minors both at the time of trial and when the abuse occurred, they will be identified here only by their initials. In descending age order, the girls are T.C., A.C., C.C., K.C., and A.B. At the time of trial, T.C. was 15 years old, A.C. was 13, twins C.C. and K.C. were 12, and A.B. was 10. (Tr. Transcr. at 345, 380, 414, 435, 466).

Before trial, the court held a hearing pursuant to Mo. Rev. Stat. § 491.075 to decide whether to permit certain adult witnesses to testify at trial about conversations they had previously had with the juvenile victims, in which the victims disclosed Baker's sexual abuse. Section 491.075 allows for the admission of testimony concerning statements made by a child under the age of fourteen who has been the victim of a sexual crime, even though such testimony would ordinarily be considered inadmissible hearsay, so long as (1) the court holds a hearing and finds that the "time, content and circumstances of the statement provide sufficient indicia of reliability," and (2) the child witness either testifies in court, is unavailable to testify, or it is demonstrated that "testifying in court would be traumatic to the witness." *J.M.G. v. Juvenile Officer*, 304 S.W.3d 193, 196

(Mo. Ct. App. 2009); Mo. Rev. Stat. § 491.075(1).  At the hearing, two social workers (Karen Gudic and Megan Marietta) and a forensic interviewer (Beverly Tucker) testified about interviews they had previously conducted with the victims in this case.  (Tr. Transcr. 7-20, 35-93).  The trial court concluded that all of the hearsay evidence presented at the hearing possessed sufficient indicia of reliability to be admitted at trial at trial under § 491.075.  (Tr. Transcr. at 19, 144).

At trial, T.C. testified that she was 13 years old when Baker first touched her.  (Tr. Transcr. at 371).  She testified that Baker touched both her chest and her private part with his hand under her clothes.  (Tr. Transcr. at 352-54, 362).  T.C. also stated that Baker touched her chest "more than once," (Tr. Transcr. at 375-76), and that he touched her on "more than five" occasions in total.  (Tr. Transcr. at 377).

A.C. testified that she was around 11 years old when Baker touched her. (Tr. Transcr. at 411).  A.C. testified that on separate occasions Baker squeezed her genitals over her clothes and squeezed her breast underneath her bra.  (Tr. Transcr. at 398-99, 394).

C.C. testified that Baker touched her "middle part" (i.e., her genitals) with his hands over her clothes.  (Tr. Transcr. at 419-20).  She also stated that he touched her five separate times, always over her clothing.  (Tr. Transcr. at 422, 428).

K.C. testified that she once woke up in Baker's room and that he then prevented her from exiting by threatening to hit her with a belt. (Tr. Transcr. at 440-42). She stated that on that occasion Baker touched both her chest and genitals over her clothes, as well as her "behind." (Tr. Transcr. at 445-46). K.C. also testified that Baker touched her genitals under her clothes on a separate occasion. (Tr. Transcr. at 449-50).

The youngest victim, A.B., testified that Baker put his "middle part" between her legs, and that his "middle part" touched her "middle part." (Tr. Transcr. at 477-79). She said that his "middle part" went inside her private part "a little." (Tr. Transcr. at 492). She also stated that Baker put his finger inside of her "middle part," (Tr. Transcr. at 480-81), and that he twice touched her breast with his mouth. (Tr. Transcr. at 482-83).

Part of Baker's trial strategy was to cast doubt on the victims' credibility by highlighting inconsistencies between their statements at trial and their previous accounts of the abuse. For example, on cross-examination Baker's attorney suggested that T.C. had previously told a social worker that Baker touched her private part only once and no other times, (Tr. Transcr. at 372), that A.C. had previously stated Baker never touched her under her clothes, (Tr. Transcr. at 404), that C.C. had told a social worker Baker touched her only once, (Tr. Transcr. at 429), that K.C. told a social worker Baker had tried to touch her middle but never

did, (Tr. Transcr. at 460-61), and that A.B. had told a social worker that Baker only ever touched her with his hands and mouth. (Tr. Transcr. at 496).

In an effort to explain the discrepancies in the girls' stories, the State offered the testimony of Megan Marietta, a social worker. The purpose of Marietta's testimony was to explain, in general terms, the process of disclosure for juvenile victims of sexual abuse, and how it might help explain why a juvenile sex abuse victim would alter her account of the abuse over time. When the State attempted to elicit this testimony, defense counsel objected and the following exchange ensued:

> [Prosecutor]: And Ms. Marietta, can you tell us about the process of disclosure of a child for some sort of abuse?
>
> [Marietta]: Yes.
>
> [Defense Counsel]: I'm going – to I'm going to object again as far as relevance and bolstering. General disclosure of – unless [Marietta's] going to testify as to specific disclosures with these kids. General disclosures I think is not relevant.
>
> [The Court]: Come on over here, please.
>
> (Counsel approached the bench, and the following proceedings were had:)
>
> [The Court]: The relevance at this time?
>
> [Prosecutor]: In order to explain the – there have been some inconsistencies with the girls that is explained through the process of disclosure, why they would say one thing one time, another thing at a different time. She's an expert that can testify to that. That's not something in a jury's regular course of learning in their lifetime.
>
> . . .

[The Court]:  Why don't you just ask about that specifically if you wish to, and then I'll see what – if she's asked that, are you going to object to it?  I'm going to allow that.  [Defense Counsel] go ahead, make your objection.  I think she can talk about inconsistency in a general framework and then you can cross-examine her . . . .

. . .

(The proceedings returned to open court.)

[The Court]:  Go ahead.

[Prosecutor]:  Ms. Marietta, I need to be very specific here.

[Marietta]:  Okay.

[Prosecutor]:  Can you name, without further describing, the different steps in [the] disclosure process?

[Marietta]: Yes, I can.

[Prosecutor]:  Okay. Could you do that now?

[Marietta]: Sure.

[Defense Counsel]:  I'm still going to object, Your Honor, as far as relevance.

[The Court]: At this point it's overruled.

[Marietta]:  The first phase of the process is denial.  The second phase is a tentative disclosure.  The third phase is an active disclosure.  The fourth stage is recantation, and the fifth stage is reaffirmation.

[Prosecutor]:  Does that – do those different stages of disclosure often result in some inconsistent statements during – if you take a statement from one stage and compare it to a statement of another stage?

[Marietta]:  Yes, it could.

[Defense Counsel]:  I'm going to still object, You Honor, commenting on credibility of a witness.

[The Court]:  I'm going to allow it at this point, and I'm going to assume that counsel is going to tie this into the case at some point.

[Prosecutor]:  Yes.

[Prosecutor]:  And during your interviews, do children often go through multiple disclosure stages, or is it just one stage at the point you were interviewing them?

[Marietta]:  In the course of a forensic interview, you can see a child go through all of the phases, let alone throughout the entire systemic response.  So from the time the original allegation is seen up until whatever end point you want to use, you can see the child go to and from the stages based upon any varying consequence that may happen.

(Tr. Transcr. at 516-520).

In its closing argument, the State used Marietta's testimony to argue that the process of disclosure could explain inconsistencies in the victims' accounts of their abuse:

First you heard from a Megan Marietta. . . . And she described through her training and through her experience that children go through this process of disclosure when it comes to sexual abuse.  The first stage is denial, and so if you ask a child that's been abused right away what's happening, they might not tell you because that first stage of disclosure is the denial.  The second one is tentative where they're tentatively – they're kind of going to tell a little bit that happens because they're not quite sure what the reaction's going to be.  They're not sure how – who they're going to tell, what's going to happen, or if anything's going to change in their life.  The third step is active disclosure where they're able to actually tell what happened to them fully.  Fourth step [is] sometimes recanting.  The children will recant often because of the reaction that happens after they've told, all right.  If they're not in a comfortable environment, if they get a negative reaction, they might recant.  And then the last step is to affirm.  They affirm what had happened to them, and they go back to their active disclosure and, again, tell what had happened to them, that

they had been molested.  [Marietta] described that, and she said that can lead to sometimes inconsistencies in a child's version of events because they might be willing to tell a little bit here and then more and more as the process goes.  She says sometimes in that hour, hour and half conversation she'll have with them, they'll go through some of the steps.  Sometimes it will take years for the child to get through all of the steps of the process of disclosure.

(Tr. Transcr. at 687-688).  Defense counsel, in turn, argued to the jury that it should disbelieve the victims' testimony because of the various inconsistencies.  (Tr. Transcr. at 702-03).

Ultimately, the jury convicted Baker of two counts of first-degree statutory sodomy and six counts of first-degree child molestation.  On January 25, 2013, the trial court sentenced Baker to concurrent life sentences on all counts.  (Tr. Transcr. at 720).  On direct appeal from his conviction, Baker challenged only the trial court's decision to allow Marietta to testify about the five stages of disclosure.  On February 11, 2014, the Missouri Court of Appeals denied Baker's appeal and affirmed his conviction.  *State v. Baker*, 422 S.W.3d 508 (Mo. Ct. App. 2014) (Resp. Exh. E).

Baker then filed a pro se motion for post-conviction relief under Missouri Rule 29.15.  (Resp. Exh. F).  Baker's pro se motion contained only one claim – that trial counsel was ineffective because trial counsel had failed to comply with Baker's request to ask certain unspecified questions of

certain unspecified witnesses. Appointed counsel amended Baker's motion, adding another claim that the sentence and judgment form erroneously indicated Baker to be a persistent offender. Counsel also attached Baker's pro se motion to the amended motion. On October 20, 2014, the motion court agreed that Baker was entitled to have the record corrected to reflect his status as a prior, not persistent, offender; but the court denied Baker's ineffective assistance of counsel claim without an evidentiary hearing. (Resp. Exh. G). Baker did not appeal from the motion court's partial denial of his motion for post-conviction relief.

## Discussion

In his habeas petition, Baker sets forth three grounds for relief:

(1) Trial counsel was ineffective because trial counsel (a) failed to locate a witness named Mike Madura who would allegedly have testified that the victims were lying that Baker abused them; (b) failed to recall State's witness Kathleen Chineth to ask her certain questions at trial; and (c) failed to ask for a recess at trial to interview a particular juvenile witness.

(2) The trial court deprived Baker of due process and a fair trial by allowing Marietta to testify about the stages of disclosure.

(3) The trial court erroneously admitted certain hearsay statements that did not qualify for admission under § 491.075. Specifically, Baker contends that the trial court improperly determined that the testimony of social worker Karen Gudic and of certain unspecified employees of the Children's Advocacy Services of Greater St. Louis (commonly known as the "CAC") was admissible under § 491.075.[2] Presumably, the CAC employees to

---

[2] Although Baker's petition groups his claim regarding Gudic together with his second ground for relief, I will address it along with the third ground for analytical clarity.

whom Baker refers are Marietta and Beverly Tucker, both of whom interviewed the victims in this case while employed by CAC.

## I. Procedural Bar

The twin doctrines of exhaustion and procedural default ensure that state prisoners give state courts the first chance to decide their federal claims. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). Under the exhaustion requirement, a federal court may not consider a state prisoner's habeas petition unless the prisoner has exhausted all available state court remedies. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b)(1)(A). To exhaust her state remedies, a prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. Under the doctrine of procedural default, federal habeas courts are also barred from hearing claims that a state prisoner has not fairly presented to the state courts on direct appeal or in post-conviction proceedings. *Sweet v. Delo*, 125 F.3d 1144, 1149 (8th Cir. 1997).

A state prisoner's remedies are not exhausted so long as she "has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). Once a prisoner can no longer

bring her claims in state court (for example, because they would be time barred), the exhaustion requirement is technically satisfied. *O'Sullivan*, 526 U.S. at 848; *Welch v. Lund*, 616 F.3d 756, 760 (8th Cir. 2010) (stating that claims are technically exhausted when there is "no state-law remedy still available"). However, even though a prisoner may *technically* exhaust her claims by simply running out the clock in state court, in such a case she will not be deemed to have *properly* exhausted her claims. *O'Sullivan*, 526 U.S. at 848. When claims are improperly exhausted, they are procedurally defaulted. *Id.* And once a claim is procedurally defaulted, a federal habeas court may not consider it "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

**Ground One: Ineffective Assistance of Counsel**

Baker's first ground for relief contains three claims for ineffective assistance of trial counsel. Under Missouri law, all claims for ineffective assistance of counsel must be raised in a motion for post-conviction relief under Rule 29.15. *State v. Martin*, 386 S.W.3d 179, 185 (Mo. Ct. App. 2012); Rule 29.15(a). However, even construing Baker's Rule 29.15 motion broadly, it at most included only one of the three ineffective assistance

claims that he asserts here (namely, that trial counsel was ineffective for failing to ask certain questions of State's witness Kathleen Chineth). (*See* Resp. Exh. F). Therefore, Baker did not exhaust the other two claims contained in his first ground because, by failing to raise them in a motion under Rule 29.15, he did not allow the Missouri courts "one full opportunity" to resolve them. As for the ineffective assistance claim that Baker arguably did include in his Rule 29.15 motion, that claim was also not exhausted because Baker never appealed from the denial of that motion, meaning he did not give the Missouri courts one *full* opportunity to resolve it. *See Jolly v. Gammon*, 28 F.3d 51, 53 (8th Cir. 1994) ("Missouri procedure requires that a claim be presented at each step of the judicial process in order to avoid default. Failure to raise a claim on appeal from the denial of a post-conviction motion erects a procedural bar to federal habeas review."); *Osborne v. Plunkett*, 411 F.3d 911, 919 (8th Cir. 2005) (finding a prisoner's claim procedurally barred because he failed to include the claim in his appeal from the denial of his Rule 29.15 motion).

Thus, Baker did not properly exhaust the three claims contained in his first ground for relief. If these claims could still be raised in the state courts, the appropriate remedy would be for this Court to dismiss Baker's entire habeas petition so that he could give the state courts the first chance to

consider the unexhausted claims. *Rose v. Lundy*, 455 U.S. 509, 522 (1982). However, Baker can no longer raise any of these claims in state court. He cannot file another motion for post-conviction relief because successive motions are prohibited by Rule 29.15(l). Nor can he appeal from the partial denial of his original Rule 29.15 motion, because the time for taking such an appeal has long since run out. This is so because, under Rule 29.15(k), the denial of a Rule 29.15 motion is "deemed a final judgment for purposes of appeal by the movant," and Missouri law requires all appeals from a final judgment to be taken within ten days after the judgment becomes final. *Berger v. Cameron Mut. Ins. Co.*, 173 S.W.3d 639, 640 (Mo. banc. 2005); Rule 81.04(a). Here, the motion court's denial of Baker's Rule 29.15 motion became final on October 20, 2014. (Resp. Exh. G). He was thus required to file notice of appeal by October 30, 2014, but did not. Even so, Baker had an additional six months to seek a special order permitting a late appeal. *Berger*, 173 S.W.3d at 640; Rule 81.07(a). But Baker missed this six-month window too, as it closed on April 20, 2015. Baker did not even file his initial habeas petition until August 14, 2015, nearly four months after the extension period had ended. (Doc. 1). Nor does Baker have the ability to raise these claims in a state habeas corpus action under Missouri Rule 91. *See Daniels v. Jones*, 944 F.2d 429, 430 (1991) (holding that a Missouri

prisoner had exhausted his state remedies even without filing a state habeas corpus action, because "it is clear under Missouri law that state habeas corpus relief is unavailable on claims that could have been raised . . . during state postconviction proceedings"). Thus, Baker's entire first ground for relief has been improperly exhausted, meaning that it is procedurally defaulted. *O'Sullivan*, 526 U.S. at 848; *Welch*, 616 F.3d at 758 ("A failure to exhaust remedies properly in accordance with state procedure results in procedural default of the prisoner's claims.").

Because Baker's entire first ground for relief is procedurally defaulted, this Court cannot consider any of the claims therein unless Baker shows (1) cause and prejudice; or (2) a fundamental miscarriage of justice. To establish "cause," Baker must show that "some objective factor external to the defense" impeded his efforts to present these claims to the state courts. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate prejudice, Baker must show that the claimed trial errors "worked to his actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). However, because Baker offers no reason for his failure to properly raise these claims in state court, he provides nothing that might constitute "cause" sufficient to excuse his default.

Alternatively, Baker might be able to excuse his procedural default by showing that failure to consider this ground for relief would result in a fundamental miscarriage of justice. This requires Baker to demonstrate that he is actually innocent of the crimes for which he was convicted. *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *see also Schlup v. Delo*, 513 U.S. 298, 321 (1995) (explaining that the Supreme Court has "explicitly tied the miscarriage of justice exception to the petitioner's innocence"). To establish actual innocence under *Schlup*, a petitioner must present "new evidence" that "was not presented at trial," in light of which it is "more likely than not that no reasonable juror would have convicted" the petitioner. 513 U.S. at 324, 327. A *Schlup* claim is "'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Schlup*, 513 U.S. at 315 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)). The Supreme Court has repeatedly emphasized that the standard for a *Schlup* actual innocence claim is a stringent one, which most habeas petitioners will not meet. *See Schlup*, 513 U.S. at 321 ("[H]abeas corpus petitions that advance a substantial claim of actual innocence are extremely rare."); *House v. Bell*, 547 U.S. 518, 538 (2006) (stating that the standard for actual innocence is "demanding" and will be met in only the "extraordinary case"); *McQuiggin*

*v. Perkins*, 133 S. Ct. 1924, 1928 (2013) ("[T]enable actual-innocence gateway pleas are rare.").

Although Baker does not here argue that he can establish his actual innocence, he does assert in his first ground for relief that his trial counsel was ineffective for failing to locate a witness named Mike Madura,[3] who Baker alleges would have testified that the victims in this case were induced to lie that Baker had abused them. However, Baker's petition does not include an affidavit from Mike Madura; in fact, Baker offers nothing more than a bare allegation that Madura would have testified to this if trial counsel had been able to track him down. Baker's mere *allegation* does not qualify as new *evidence* capable of supporting a *Schlup* claim. *See Weeks v. Bowersox*, 119 F.3d 1342, 1352-53 (8th Cir. 1997) (holding that mere allegations of evidence are insufficient to invoke the actual innocence exception).

Moreover, even if Baker could produce an affidavit from Madura stating that the victims were coerced into falsely testifying against him, an actual innocence claim based on this evidence would still fail. In the Eighth Circuit, "evidence is not 'new' under *Schlup* unless it was 'not available at

---

[3] Mike Madura is possibly the same person who is identified in the trial transcript as "Mike Mandora." (Tr. Transcr. at 670-71). At trial, Baker's niece, Ruby Barber, testified that Mike Mandora was her fiancée, and that she would occasionally stay at Mandora's home in St. Louis County. (Tr. Transcr. at 670-72).

trial and could not have been discovered earlier through the exercise of due diligence.'" *Kidd v. Norman*, 651 F.3d 947, 952 (8th Cir. 2011) (quoting *Amrine v. Bowersox*, 238 F.3d 1023, 1029 (8th Cir. 2001)). Under this standard, Madura's alleged testimony cannot serve as "new" evidence to excuse Baker's procedural default unless it "could not have been discovered earlier through the exercise of due diligence." But nothing in the record or in Baker's petition indicates that Madura could not have been located before trial had either Baker or his trial counsel exercised due diligence. At his sentencing hearing, Baker did complain that his trial counsel had "brought witnesses in, but not the ones I needed." (Tr. Transcr. at 724). Although Baker could not name the exact witnesses that trial counsel had failed to locate, trial counsel suggested that Baker meant "the white fellow that lived in the basement" of the house with Baker, as well as someone named "Mike Ozzie." (Tr. Transcr. at 725-27). The "white fellow that lived in the basement" was a man named Kenneth Bourbon, not Mike Madura. (Tr. Transcr. at 360, 409, 486, 638, 642). Trial counsel stated at the sentencing hearing that he tried but was unable to locate both Bourbon and Ozzie. (Tr. Transcr. at 725-27). However, there was no mention of Mike Madura at the hearing.[4] Thus, although it might be possible from the record to say that

---

[4] The Court has no reason to believe that Madura and Ozzie may be the same person, apart from

Bourbon and Ozzie could not have been found even "through the exercise of due diligence," there is no similar basis from which the Court could conclude that Mike Madura could not have been found earlier if Baker and his trial counsel had searched diligently. Therefore, even if it were true that Madura would in fact provide an affidavit in accordance with Baker's bare allegations, it would not constitute "new evidence" for *Schlup* purposes. Baker thus cannot invoke the fundamental miscarriage of justice exception to save his first ground for relief from procedural default.

For these reasons, ground one must be denied as procedurally barred.

## Ground Three: Hearsay Testimony

In his third ground for relief, Baker argues that the trial court improperly admitted hearsay testimony by Gudic and certain CAC employees (as noted above, presumably Marietta and Tucker) that did not qualify for admission under § 491.075. Baker did not challenge the admission of Gudic's, Tucker's, or Marietta's testimony either on direct appeal or in his post-conviction proceedings.[5] He thus "fail[ed] to present [these claims] to the Missouri courts at any stage of his direct appeal or his post-conviction proceedings." *Sweet*, 125 F.3d at 1147. Baker no longer

---

their shared first name.
[5] Although Baker did challenge the trial court's admission of Marietta's testimony on the specific issue of the stages of disclosure (which is the subject of his second ground for relief, discussed below), Baked never argued in the state courts that Marietta's *entire* testimony should not have been admitted, which the Court understands to be Baker's argument here.

has any avenue to raise these claims in the Missouri courts. *See State v. Galvan*, 744 S.W.2d 510, 511 (Mo. Ct. App. 1988) ("Successive direct appeals in a criminal case are not authorized."); *Daniels*, 944 F.2d at 430 (noting that, under Missouri law, a state habeas corpus action is generally unavailable for claims that could have been raised on direct appeal). Therefore, as with his first ground for relief, Baker's third ground for relief is improperly exhausted and thus procedurally defaulted. *O'Sullivan*, 526 U.S. at 848. As discussed above, Baker offers no "cause" to justify a default, nor does he point to any new evidence that might satisfy the *Schlup* actual innocence standard. Therefore, his third ground for relief will also be denied as procedurally barred.

## II. Merits of the Remaining Ground for Relief

Baker's lone remaining ground for relief is that the trial court erred in allowing Marietta to testify about the stages of disclosure experienced by juvenile victims of sexual abuse, and thereby denied him due process and a fair trial. Baker raised this ground on direct appeal, and the Missouri Court of Appeals denied it. *State v. Baker*, 422 S.W.3d 508 (Mo. Ct. App. 2014) (Resp. Exh. E).

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court may grant relief to a state prisoner only

if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

Under subsection (1), a state court's decision is "contrary to" clearly established Federal law when "the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court's decision is an "unreasonable application of" clearly established Federal law when "the state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies it to the facts of the particular case." *Id.* To grant relief under the "unreasonable application" clause, it is not enough that this Court would have decided the claim differently; rather, the state court's application of Supreme Court precedent must have been "objectively unreasonable." *Id.* (citing *Williams v. Taylor*, 529 U.S. 362, 409-410 (2000)). Under subsection (2), a "state court's decision involves 'an unreasonable determination of the facts in light of the evidence presented in state court

proceedings' only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004) (quoting 28 U.S.C. § 2254(d)(2)). The petitioner has the burden of making this showing by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

"'Questions regarding admissibility of evidence are matters of state law, and they are reviewed in federal habeas inquiries only to determine whether an alleged error infringes upon a specific constitutional protection or is so prejudicial as to be a denial of due process.'" *Rousan v. Roper*, 436 F.3d 951, 958 (8th Cir. 2006) (quoting *Logan v. Lockhart*, 994 F.2d 1324, 1330 (8th Cir. 1993)). A state violates the Fourteenth Amendment's Due Process Clause when it admits evidence that is "so unduly prejudicial that it renders the trial fundamentally unfair." *Payne v. Tennessee*, 501 U.S. 808, 825 (1991) (citing *Darden v. Wainwright*, 477 U.S. 168, 179-83 (1986)); *Kansas v. Carr*, 136 S. Ct. 633, 644 (2016). Accordingly, the issue posed is whether Marietta's testimony was "so unduly prejudicial" as to render Baker's trial "fundamentally unfair."

In denying this claim on direct appeal, the Missouri Court of Appeals applied the correct federal standard. *See Baker*, 422 S.W.3d at 513 ("[W]e . . . will reverse only if the error was so prejudicial that it deprived the

defendant of a fair trial.").  The Court of Appeals reasoned that Marietta's testimony "was admissible to assist the jury in understanding the behavior of victims of sexual abuse, a topic relevant to the jurors' duties of assessing the witnesses' credibility and rendering a verdict."  Baker does not here argue that the decision of the Court of Appeals was based on an unreasonable determination of the facts.  Therefore, this Court may reverse the appellate court's decision only if it unreasonably applied the governing standard.

In *Anderson v. Goeke*, 44 F.3d 675 (8th Cir. 1995), the court considered whether evidence admitted at trial had been so unduly prejudicial as to deny the defendant due process.  Anderson had been convicted of first-degree murder for persuading three men to shoot her husband.  At trial, one of Anderson's defenses was that she suffered from Battered Spouse Syndrome because her husband had physically abused her.  *Id.* at 677.  The prosecution advanced a different theory: that Anderson was motivated at least in part by "lust," because she had been having extramarital affairs with multiple men, including one of her husband's killers.  *Id.*  On appeal, Anderson argued that the prosecutor's various references throughout the trial to her sexual conduct were unduly prejudicial and therefore denied her due process.  The court stated:

The question of undue prejudice in the admissibility of evidence addresses itself to the discretion of the trial court. Here, this evidence bore upon the validity of Anderson's diminished mental capacity claim and supported the State's theory that Anderson killed her husband out of greed and lust. Without necessarily approving admissibility as a matter of the trial court's discretion, we cannot say that the prosecutor's presentation of that testimony violated Anderson's due process rights.

*Id.* at 678. Thus, because the challenged evidence "bore upon the validity of" one of Anderson's defenses, and also supported the State's theory of the case, the court found no denial of due process in the evidence's admission.

Similarly here, Marietta's testimony as to the stages of disclosure for a juvenile victim of sexual abuse "bore upon the validity of" Baker's attempt to discredit the victims by highlighting inconsistencies between their trial testimony and their previous accounts of the abuse. Marietta's testimony also supported the state's theory of the case, because it helped the State to explain why the girls' stories might plausibly have varied over time. Thus, the admission of Marietta's testimony on the stages of disclosure was not "so unduly prejudicial" as to make Baker's trial "fundamentally unfair." *See also Wood*, 809 F.2d at 460 (finding no due process violation when the challenged testimony "bore directly upon the validity of" the defendant's defense and was "highly relevant to the state's theory" of the crime).

Furthermore, even assuming for argument's sake that the trial court *did* err in admitting Marietta's testimony, "not every trial error amounts to a constitutional violation." *Anderson*, 44 F.3d at 679. Rather, a state court evidentiary ruling requires reversal only if the petitioner shows that "'there is a reasonable probability that the error complained of affected the outcome of the trial – i.e. that absent the alleged impropriety the verdict probably would have been different.'" *Id.* (quoting *Hamilton v. Nix*, 809 F.2d 463, 470 (1987)). Important considerations to this inquiry include "the frequency and pervasiveness of the alleged misconduct in the context of the entire trial, the weight of the evidence supporting guilt, and whether the trial judge gave a cautionary instruction to the jury on how to properly use the testimony elicited." *Anderson*, 44 F.3d at 679. Viewing Marietta's testimony in the context of the entire trial, there is no reasonable probability that the verdict would have been different without it. Although the trial judge did not give a cautionary instruction, Marietta's testimony was considerably less important than that of the five victims, each of whom provided strong evidence of Baker's guilt by separately testifying as to how he had abused them.

Therefore, because the Missouri Court of Appeals reasonably applied the correct federal standard, its decision is entitled to deference. Baker's second ground for relief will be denied accordingly.

## Certificate of Appealability

A petitioner denied a writ of habeas corpus under 28 U.S.C. § 2254 may not appeal unless granted a Certificate of Appealability. 28 U.S.C. § 2253(c)(1)(A). To be entitled to a Certificate of Appealability, the petitioner must make a substantial showing of the denial of a constitutional right. § 2253(c)(2); *see Tiedeman v. Benson*, 122 F.3d 518, 522 (8th Cir. 1997). A showing is substantial when the issues raised are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). Finding none of these to be the case here, I will deny a Certificate of Appealability on all claims.

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Robert Baker for writ of habeas corpus pursuant to 28 U.S.C. § 2254 [Doc. 1] is denied as moot.

**IT IS FURTHER ORDERED** that the amended petition of Robert Baker for writ of habeas corpus pursuant to 28 U.S.C. § 2254 [Doc. 5] is denied.

**IT IS FURTHER ORDERED** that the petitioner has not made a substantial showing of a denial of a constitutional right and this Court will not grant a Certificate of Appealability.

A separate judgment in accordance with the memorandum and order is entered this same date.


_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 10th day of September, 2018.